**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wavve Americas Incorporated,<br><br>    Plaintiff,<br><br>v.<br><br>Unknown Party, et al.,<br><br>    Defendants. | No. CV-24-02071-PHX-DWL<br><br>**ORDER** |

Pending before the Court is a motion for an *ex parte* temporary restraining order ("TRO") and preliminary injunction filed by Plaintiff wavve Americas, Inc. ("Plaintiff"). (Doc. 22.) For the reasons that follow, the TRO application is granted as to Defendants and the motion for preliminary injunction is granted as to nonparty Namecheap, Inc. ("Namecheap"). The preliminary injunction motion as to Defendants remains pending.

**RELEVANT BACKGROUND**

On August 14, 2024, Plaintiff filed the complaint, alleging copyright infringement by the following Defendants: (1) Unknown Registrant of GOPLAY.PW; (2) Unknown Registrant of SONAGITV.LIVE; (3) Unknown Registrant of KOTBC.COM; (4) Unknown Registrant of YEWOOTV.COM; (5) Unknown Registrant of TV25.CO; and (6) James Marque, the registrant of SAFETV-ONLINE.COM. (Doc. 1 at 1.) The complaint alleged that Defendants "have registered the domain names of GOPLAY.PW, SONAGITV.LIVE, KOTBC.COM, SAFETV-ONLINE.COM, YEWOOTV.COM, and TV25.CO" with Namecheap, an Arizona-based domain registrar with a website at NAMECHEAP.COM.

(*Id.* ¶ 3.) The complaint further alleged that these domain names lead to webpages where the public can view, free of charge, "media content, including TV shows and movies . . . many of which are exclusively licensed to [Plaintiff] for distribution in the United States." (*Id.* ¶ 18.) Defendants allegedly "use rotating or varying subdomains" in order to "frustrate enforcement efforts." (*Id.*)

That same day, Plaintiff filed an *ex parte* motion for TRO and motion for preliminary injunction requiring Namecheap "to disable and place a registry hold on the domain names for the pendency of the litigation" and "to unmask and reveal the actual identity of each of the unknown registrants of the [domain names]." (Doc. 3 at 1-2.) Plaintiff also filed a motion to engage in expedited discovery by serving a subpoena on Namecheap to "identify the unknown defendants." (Doc. 6 at 4.)

On August 16, 2024, the Court issued an order denying the requested injunctive relief because it would have only been directed toward Namecheap, a non-party, and not toward Defendants. (Doc. 17.) In the same order, the Court granted Plaintiff's request to engage in expedited discovery. (*Id.*)

On August 26, 2024, Plaintiff filed a renewed application for a TRO and motion for preliminary injunction, this time seeking injunctive relief as to Defendants as well as Namecheap. (Doc. 18.)

On August 28, 2024, Plaintiff filed a motion to withdraw its August 26, 2024 filing. (Doc. 19.) Plaintiff explained that it had "identified at least one additional defendant that it will be adding to this matter in a forthcoming First Amended Complaint" and therefore sought to withdraw the renewed motion "to preserve judicial resources." (*Id.*) The Court granted the withdrawal motion. (Doc. 20.)

On September 5, 2024, Plaintiff filed a first amended complaint ("FAC"), which added a new Defendant, Unknown Registrant of TV25.INFO. (Doc. 21.) Plaintiff also filed a second renewed application for a TRO and motion for preliminary injunction (Doc. 22), which, like its withdrawn predecessor, seeks an *ex parte* TRO as to Defendants and indicates that Namecheap has stipulated to entry of "any order issued by the Court requiring

Namecheap to act or to refrain from acting with regard to the domain names at issue in this action, . . . including but not limited to disabling public access to, placing a registry hold on, and/or transferring ownership of the [domain names]." (Doc. 22-2 at 14.) This latest motion for injunctive relief also seeks an order permitting expedited discovery from "Vautron Rechenzentrum AG as Registrar of record for TV25.INFO for the purpose of learning the identity of the registrant of TV25.INFO." (Doc. 22 at 2.)

# ANALYSIS

I. *Ex Parte* TRO As To Defendants

    A.    **Legal Standard**

Under Rule 65 of the Federal Rules of Civil Procedure, a party may seek injunctive relief if it believes it will suffer irreparable harm during the pendency of an action. There are two types of injunctions available under Rule 65: TROs and preliminary injunctions. Although both are governed by the same substantive standards, *see Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), a TRO may be issued without notice to the adverse party. More specifically, under Rule 65(b)(1), the Court "may issue a temporary restraining order without written or oral notice to the adverse party or its attorney" if two requirements are met: (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"; and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." The Ninth Circuit has cautioned that "very few circumstances justify the issuance of an ex parte TRO." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).

On the merits, "[a] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (cleaned up). *See also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right.") (citation omitted). "A plaintiff

seeking a preliminary injunction must establish that [1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20.  "But if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (cleaned up).  Under this "serious questions" variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.  Regardless of which standard applies, the movant "carries the burden of proof on each element of either test." *Env't. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

B. **Discussion**

Plaintiff seeks an *ex parte* TRO directed toward the seven Defendants in this action that is fairly narrow in scope.  Plaintiff simply requests that the seven Defendants be ordered to "promptly upon receipt of a copy of this Order disable public access to their respective domain name(s) until further notice." (Doc. 22 at 3.)

As noted, one of the threshold requirements under Rule 65(b)(1) when a party seeks an *ex parte* TRO is that the "movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."  Here, Plaintiff's counsel has provided a detailed declaration that identifies an array of reasons why notice should not be required, including that "many of the Domain Names[1] have sophisticated mechanisms in place to routinely move the infringing content to similar but unique domain names and to advise their viewer based of such changes.  If given notice of this action, Defendants are

---

[1] Plaintiff uses the terms "Domain Names" or "Subject Domain Names" to refer to the domain names at issue in the FAC—that is, the domain names (GOPLAY.PW, SONAGITV.LIVE, KOTBC.COM, SAFETV-ONLINE.COM, YEWOOTV.COM, TV25.CO, and TV25.INFO) used to define the defendants who are registrants of these domain names.  The Court will follow suit.

likely to undertake quick and widespread efforts to quickly register new domain names to host the infringing works and to inform their viewership of such new domain names. These types of evasive actions would then require [Plaintiff] to file additional lawsuits to keep chasing the registrants of these Domain Names as the infringing content is shifted with little interruption to the infringement itself." (Doc. 22-1 ¶ 10.) The Court is satisfied that notice should not be required under these circumstances.

The other threshold requirement under Rule 65(b)(1) is that the movant come forward with "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." That requirement is satisfied by a declaration from Jeongphil ("JP") Joo, Plaintiff's administrative director. (Doc. 4.) The Joo declaration confirms, in broad strokes, the factual allegations in the FAC and explains why Defendants' "continued uploading of Korean programming exclusively licensed to [Plaintiff] will cause [Plaintiff] to continue to suffer immediate and irreparable harm due to the loss of current and future subscribers that would be drawn to Defendant[s'] free programming services instead of to [Plaintiff's] legitimate KOCOWA® service." (*Id.* ¶ 6.) This is sufficient to establish both the irreparability and immediacy of the harm that Plaintiff will suffer in the absence of a TRO. *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) (affirming district court's finding that second *Winter* factor was satisfied in copyright infringement action, even though "damages could be calculated based on [lost] licensing fees," because other forms of harm caused by the challenged conduct, including "loss of goodwill," "cannot readily be remedied with damages"). Additionally, the declaration from Plaintiff's counsel explains why the contact information associated with the one known Defendant, James Marque, appears to be false and why the contact information for the remaining Defendants is currently unknowable. (Doc. 22-1 ¶¶ 6-8.) These details provide an additional reason why Plaintiff should not be required to wait until "the adverse party can be heard in opposition" before obtaining relief.

Turning to the merits, the first *Winter* factor addresses the likelihood of success on

the merits. The declarations from Joo and Plaintiff's counsel adequately establish that Plaintiff "licenses media content from . . . the three largest broadcast networks in Korea" and "is the exclusive licensee of the United States distribution rights to over 1,100 different programs, which it distributes via its KOCOWA® service" (Doc. 22-1 ¶ 2) and that "many of the same programs that are exclusively licensed to [Plaintiff] for streaming via its KOCOWA® service . . . are often available on the webpages resolving from and associated with each of the Domain Names." (Doc. 4 ¶ 4.) Thus, for purposes of the TRO request, Plaintiff has established a likelihood of success on the merits of its copyright infringement claim against Defendants. *Disney Enterprises,* 869 F.3d at 856 ("To establish direct copyright infringement, the Studios must (1) show ownership of the allegedly infringed material and (2) demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106.") (citations omitted); *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1170 (9th Cir. 2013) ("[I]f a copyright owner grants an exclusive license of particular rights, only the exclusive licensee and not the original owner can sue for infringement of those rights.").

The second *Winter* factor addresses the likelihood of irreparable harm in the absence of preliminary relief. As noted, the Joo declaration states that Defendants' "continued uploading of Korean programming exclusively licensed to [Plaintiff] will cause [Plaintiff] to continue to suffer immediate and irreparable harm due to the loss of current and future subscribers that would be drawn to Defendant[s'] free programming services instead of to [Plaintiff's] legitimate KOCOWA® service." (Doc. 4 ¶ 6.) As discussed, this is sufficient to establish the likelihood of irreparable harm even though a portion of Plaintiff's harm (*i.e.*, lost licensing fees) could presumably be addressed through monetary damages. *Disney Enterprises,* 869 F.3d at 866.

The third *Winter* factor addresses the balance of equities. The balance tips overwhelmingly in Plaintiff's favor here, where (at least on this record) Plaintiff is an innocent victim of copyright infringement while Defendants are calculated infringers who have taken steps to hide their identities.

The fourth *Winter* factor addresses the public interest. This factor favors Plaintiff for the same reasons. *Disney Enterprises,* 869 F.3d at 867 ("[A]s the district court concluded, 'the public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating television programming' . . . .").

Finally, the Court agrees with Plaintiff (Doc. 22 at 17) that a bond is unnecessary here. However, to the extent Plaintiff seeks a TRO against Defendants that will remain in effect "until further notice" (Doc. 22-3 at 1), that request is denied. Under Rule 65(b)(2), a TRO "expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension." Thus, as to Defendants, the Court sets the time for expiration at 14 days. *See generally* 2 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 65 (2022) ("As initially entered, a TRO is limited to a maximum of 14 days.").

Pursuant to Rule 65(b)(3), "the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character." As a practical matter, the hearing cannot be set until the identities and contact information for Defendants are ascertained and notice of the preliminary injunction motion is given to Defendants. Thus, Plaintiff is ordered to inform the Court immediately each time a Defendant's identity and contact information are ascertained and notice is given.

II.     Stipulation As To Namecheap

In addition to seeking to compel Defendants to disable public access to their respective Domain Names, Plaintiff also asks the Court to require Namecheap to "promptly upon receipt of a copy of this Order disable public access to and place a registry hold on [the domain names of GOPLAY.PW, SONAGITV.LIVE, KOTBC.COM, YEWOOTV.COM, TV25.CO, and SAFETV-ONLINE.COM] until further notice." (Doc. 22-3 at 2.) In support of this request, Plaintiff's counsel explains in his declaration that he

engaged in correspondence with representatives from Namecheap following the issuance of the August 16, 2024 order and that Namecheap eventually "stipulate[d] that it will comply with any orders issued by the Court regarding the domain names at issue, even if it is not named as a party to the action." (Doc. 22-1 ¶¶ 14-17.) Namecheap has memorialized that agreement in a written stipulation. (Doc. 22-2 at 14.)

Under the circumstances and in light of Namecheap's actual awareness of this action and willingness to be bound, the Court sees little harm in binding Namecheap. Because Namecheap has expressly stipulated that it "will comply with any order" the Court issues that would require Namecheap "to act or refrain from acting with regard to the domain names at issue in this action," it is clear that a preliminary injunction hearing is unnecessary as to Namecheap. Because the "underlying purpose" of a TRO is "preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing," *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974), it follows that there would be no purpose in issuing a TRO as to Namecheap. *See also* 2 Gensler, *supra*, Rule 65 ("It is important to remember that the purpose of a TRO is to prevent any irreparable harm that might occur before the court is able to hold a properly noticed hearing on whether to grant a preliminary injunction."). Namecheap's stipulation signifies that it does not intend to contest the applicability of the *Winter* factors or the issuance of a preliminary injunction. Thus, there is no justification for a TRO and no impediment to issuance of a preliminary injunction as to Namecheap at this juncture.

III.     Expedited Discovery

At the outset of this case, Plaintiff filed a motion for permission to engage in "limited, expedited discovery to identify the owners (*i.e.*, the registrants) of the domain names GOPLAY.PW, SONAGITV.LIVE, KOTBC.COM, YEWOOTV.COM, and TV25.CO . . . , which are at the heart of this lawsuit." (Doc. 6 at 1.) On August 16, 2024, the Court granted that motion. (Doc. 17.)

Plaintiff now requests for an order "permitting limited, expedited discovery as to

Vautron Rechenzentrum AG, registrar of record for TV25.INFO to determine the identity of the Defendant unknown registrant of TV25.INFO." (Doc. 22 at 17.) This request is granted for the same reason as the previous request—it simply expands the scope of the authorized expedited discovery to encompass one more domain name.

Accordingly,

**IT IS ORDERED** that Plaintiff's request for an *ex parte* TRO (Doc. 22) is **granted** as to Unknown Registrant of GOPLAY.PW, Unknown Registrant of SONAGITV.LIVE, Unknown Registrant of KOTBC.COM, Unknown Registrant of YEWOOTV.COM, Unknown Registrant of TV25.CO, Unknown Registrant of TV25.INFO, and James Marque, the registrant of SAFETV-ONLINE.COM (collectively, "Defendants").

**IT IS FURTHER ORDERED** that Defendants, and those in active concert with Defendants, shall promptly upon receipt of a copy of this Order disable public access to their respective domain name(s) until further notice.

**IT IS FURTHER ORDERED** that Defendant Unknown Registrant of KOTBC.COM, and those in active concert therewith, shall promptly upon receipt of a copy of this Order disable public access to the Telegram account @kotbccom.

**IT IS FURTHER ORDERED** that Defendant Unknown Registrant of TV25.CO and Defendant Unknown Registrant of TV25.INFO, and those in active concert therewith, shall promptly upon receipt of a copy of this Order disable public access to the Telegram account @tv25_info.

**IT IS FURTHER ORDERED** that this TRO shall expire after 14 days unless it is extended for good cause or by stipulation.

**IT IS FURTHER ORDERED** that Plaintiff shall inform the Court immediately each time a Defendant's identity and location are ascertained and notice is sent.

**IT IS FURTHER ORDERED** that Plaintiff's request for a preliminary injunction (Doc. 22) is **granted** as to nonparty Namecheap Inc., per the parties' stipulation (Doc. 22-2 at 14). Namecheap, Inc. shall promptly upon receipt of a copy of this Order disable public access to and place a registry hold on the domain names of GOPLAY.PW,

SONAGITV.LIVE, KOTBC.COM, YEWOOTV.COM, TV25.CO, and SAFETV-ONLINE.COM until further notice.

**IT IS FURTHER ORDERED** that Plaintiff may conduct limited, expedited discovery directed to Vautron Rechenzentrum AG for the purpose of learning the identity as to the registrant of the domain name TV25.INFO.

**IT IS FURTHER ORDERED** that Plaintiff's request for a preliminary injunction (Doc. 22) as to Defendants remains pending and shall remain an active motion on the docket. A hearing shall be set at the earliest possible time.

Dated this 9th day of September, 2024.

_____
Dominic W. Lanza
United States District Judge