**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wavve Americas Incorporated, | No. CV-24-02071-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Unknown Party, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff's motion for leave to serve Defendants by alternative means. (Doc. 30.) For the following reasons, the motion is granted.

## BACKGROUND

On August 14, 2024, Plaintiff filed the complaint, alleging copyright infringement by the following Defendants: (1) Unknown Registrant of GOPLAY.PW; (2) Unknown Registrant of SONAGITV.LIVE; (3) Unknown Registrant of KOTBC.COM; (4) Unknown Registrant of YEWOOTV.COM; (5) Unknown Registrant of TV25.CO; and (6) James Marque, the registrant of SAFETV-ONLINE.COM. (Doc. 1 at 1.) The complaint alleged that Defendants "have registered the domain names of GOPLAY.PW, SONAGITV.LIVE, KOTBC.COM, SAFETV-ONLINE.COM, YEWOOTV.COM, and TV25.CO" with Namecheap, an Arizona-based domain registrar with a website at NAMECHEAP.COM. (*Id.* ¶ 3.) The complaint further alleged that these domain names lead to webpages where the public can view, free of charge, "media content, including TV shows and movies . . . many of which are exclusively licensed to [Plaintiff] for distribution in the United States."

(*Id.* ¶ 18.)  Defendants allegedly "use rotating or varying subdomains" in order to "frustrate enforcement efforts."  (*Id.*)

That same day, Plaintiff filed an *ex parte* motion for TRO and motion for preliminary injunction requiring Namecheap "to disable and place a registry hold on the domain names for the pendency of the litigation" and "to unmask and reveal the actual identity of each of the unknown registrants of the [domain names]."  (Doc. 3 at 1-2.)  Plaintiff also filed a motion to engage in expedited discovery by serving a subpoena on Namecheap to "identify the unknown defendants."  (Doc. 6 at 4.)

On August 16, 2024, the Court issued an order denying the requested injunctive relief because it would have only been directed toward Namecheap, a non-party, and not toward Defendants.  (Doc. 17.)  In the same order, the Court granted Plaintiff's request to engage in expedited discovery.  (*Id.*)

On August 26, 2024, Plaintiff filed a renewed application for a TRO and motion for preliminary injunction, this time seeking injunctive relief as to Defendants as well as Namecheap.  (Doc. 18.)

On August 28, 2024, Plaintiff filed a motion to withdraw its August 26, 2024 filing.  (Doc. 19.)  Plaintiff explained that it had "identified at least one additional defendant that it will be adding to this matter in a forthcoming First Amended Complaint" and therefore sought to withdraw the renewed motion "to preserve judicial resources."  (*Id.*)  The Court granted the withdrawal motion.  (Doc. 20.)

On September 5, 2024, Plaintiff filed a first amended complaint ("FAC"), which added a new Defendant, Unknown Registrant of TV25.INFO.  (Doc. 21.)  Plaintiff also filed a second renewed application for a TRO and motion for preliminary injunction (Doc. 22), which, like its withdrawn predecessor, sought an *ex parte* TRO as to Defendants and indicated that Namecheap had stipulated to entry of "any order issued by the Court requiring Namecheap to act or to refrain from acting with regard to the domain names at issue in this action, . . . including but not limited to disabling public access to, placing a registry hold on, and/or transferring ownership of the [domain names]."  (Doc. 22-2 at 14.)

Plaintiff also sought an order permitting expedited discovery from "Vautron Rechenzentrum AG as Registrar of record for TV25.INFO for the purpose of learning the identity of the registrant of TV25.INFO." (Doc. 22 at 2.)

On September 9, 2024, the Court granted the TRO application as to Defendants and granted the motion for preliminary injunction as to Namecheap. (Doc. 24.) The TRO ordered Defendants ("and those in active concert" with Defendants) to "disable public access to their respective domain name(s)" and the specified Telegram accounts. (*Id.* at 9.) The preliminary injunction ordered Namecheap to "disable public access to and place a registry hold on the [specified] domain names." (*Id.*) The Court also granted the request to expand the scope of the previously authorized expedited discovery to encompass one more domain name. (*Id.* at 8-10.) The Court ordered Plaintiff to file a notice each time a Defendant's identity and location were ascertained. (*Id.* at 9.)

On September 19, 2024, Plaintiff filed notices indicating that Plaintiff had ascertained the identities of the registrants of the domain names—specifically, that Thirdy Arms was the registrant of GOPLAY.PW (Doc. 26-1 at 4), James Marque was the registrant of SAFETV-ONLINE.COM and SONAGITV.LIVE (*id.* at 5), Mangho Kim was the registrant of KOTBC.COM (*id.* at 6), Kim Taeryong was the registrant of TV25.CO (*id.* at 7), Jaeho Kim was the registrant of YEWOOTV.COM (*id.* at 8), and Taeryong Kim was the registrant of TV25.INFO (Doc. 27-1 at 2).[1]

On September 20, 2024, Plaintiff filed an ex parte motion for a 14-day of extension of the TRO. (Doc. 28.) The Court granted the motion, set a hearing on the preliminary injunction motion as to Defendants for October 2, 2024 at 9:00 a.m., and set a September 30, 2024 deadline for Defendants to respond to the preliminary injunction motion. (Doc. 29.)

Later that day, Plaintiff filed the pending motion for leave to serve by alternative means. (Doc. 30.)

---

[1] Plaintiff notes that "the email address for the registrant of TV25.INFO is the same as the email address for the registrant of TV25.CO," and the listed first and last names for the registrants of the two domain names "are merely transposed." (Doc. 28 at 2.) The Court concludes that one person ("Taeryong") is the registrant of both domain names.

On September 23, 2024, Plaintiff filed proof of service of the Court's September 20, 2024 order via email to all Defendants.  (Doc. 31.)

On October 1, 2024, the Court vacated the preliminary injunction hearing and granted the preliminary injunction motion as to Defendants pursuant to LRCiv 7.2(i), which allows the Court to grant motions summarily where no opposition is filed.  (Doc. 32.)

On October 15, 2024, Plaintiff filed a notice indicating that after Plaintiff emailed the TRO order to Defendant Taeryong (now the "known" registrant of TV25.CO and TV25.INFO), Taeryong moved the "infringing operations" to new domain names: TV25.APP and TV25.ME.  (Doc. 33.)  Buried at the end of this notice is a request that the Court expand the scope of the existing preliminary injunction and the previously authorized expedited discovery to encompass the new domain names.  (*Id.* at 5.)  A footnote discusses Plaintiff's plans regarding expedited discovery.  (*Id.* at 5 n.4.)

On November 1, 2024, Plaintiff filed another notice, this one indicating that Taeryong was using four more infringing domain names in addition to the two noted in the previous notice.  (Doc. 34.)  Once again, the notice contains a buried request that the Court expand the scope of the existing preliminary injunction and the previously authorized expedited discovery to encompass the new domain names.  (*Id.* at 6.)

**DISCUSSION**

I.    Motion For Leave To Serve Via Alternative Means

Plaintiff explains that it "has now learned the identity and location of each of the previously unknown registrants" and that these now-known registrants—Thirdy Arms, James Marque, Mangho Kim ("Mangho"), Jaeho Kim ("Jaeho"), and Taeryong—all purportedly live in a foreign countries that are signatories to the Hague Service Convention (Arms and Marque in the Philippines, Jaeho in South Korea, Mangho in China, and Taeryong in Hong Kong).  (Doc. 30 at 4-11.)  Nevertheless, Plaintiff explains that the physical addresses it was able to obtain for Defendants are all false or incomplete, such that no Defendant has a known physical address.  (*Id.*)  Plaintiff seeks leave to serve

Defendants at the email addresses Plaintiff was able to obtain, each of which has been used already (to serve motions and the Court's orders) without any "bounce back" or other indication that the emails were not successfully delivered. (*Id.*)

A. **Legal Standard**

Federal Rule of Civil Procedure 4(f) provides that service on an individual in a foreign country may be accomplished:

> (**1**) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (**2**) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
> > (**A**) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
> >
> > (**B**) as the foreign authority directs in response to a letter rogatory or letter of request; or
> >
> > (**C**) unless prohibited by the foreign country's law, by:
> >
> > > (**i**) delivering a copy of the summons and of the complaint to the individual personally; or
> > >
> > > (**ii**) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (**3**) by other means not prohibited by international agreement, as the court orders.

"As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). "No other limitations are evident from the text." *Id.* "In fact, as long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country." *Id.* Rule 4(f) does not "create a hierarchy of preferred methods of service of process"; rather, "court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)." *Id.* at 1014-

15.  As such, a plaintiff need not "attempt[] permissible means of service of process before petitioning the court" for leave to serve by alternative means.  *Id.* at 1016.  Instead, a plaintiff must demonstrate only "that the facts and circumstances of the present case necessitate[] the district court's intervention," in which case the district court can "properly exercise[] its discretionary powers to craft alternate means of service"—so long as the alternative means "comport with constitutional notions of due process" and are not prohibited by international agreement.  *Id.*

B.    **Analysis**

Intervention is warranted in light of the facts and circumstances of this case. Plaintiff has attempted to discover the Defendants' whereabouts and its attempts have been unsuccessful.

Furthermore, serving the Defendants via email would "comport with constitutional notions of due process."  *Id.*  "To meet this requirement, the method of service crafted by the district court must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Id.* (internal quotation marks omitted).  In *Rio*, where the defendant had no easily ascertainable physical address and email was its primary method of communication, the Ninth Circuit concluded "not only that service of process by email was proper—that is, reasonably calculated to apprise [the defendant] of the pendency of the action and afford it an opportunity to respond—but in this case, it was the method of service most likely to reach [the defendant]."  *Id.* at 1017.  The same is true under the facts of this case.[2]

The one remaining issue is whether service by email is "not prohibited by international agreement."  *Id.* at 1014; Fed. R. Civ. P. 4(f)(3).  In *Rio*, no international

---

[2]    *Rio* was decided in 2002, at a time when email had been gaining widespread popularity for only a few years and was "untrodden ground," and the Ninth Circuit thus left it "to the discretion of the district court to balance the limitations of email service against its benefits in any particular case." 284 F.3d at 1017-18.  Technical advances over the past two decades have rendered these limitations all but obsolete, and the Court is satisfied that the benefits of email service in this case would far outweigh any conceivable technological limitations.

agreement was at issue.  The Ninth Circuit noted that "[a] federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention referenced in Rule 4(f)(1)," but because the defendant was in Costa Rica, which was "not a signatory," the Hague Service Convention did "not apply" in that case.  284 F.3d at 1015 n.4.

"The Hague Service Convention is a multilateral treaty . . . intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988).  Article 1 of the Convention specifies that it applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad," but it does not apply "where the address of the person to be served with the document is not known."  Art. 1.

Here, the Defendants' addresses are unknown, and therefore the Hague Service Convention does not apply and *Rio* controls.  *Cf. Media Trademark & Licensing Ltd. v. COINGEEKLTD.COM*, 2021 WL 2895289 (D. Ariz. 2021) (distinguishing *Rio* in a case where the defendant's address appeared to be known).

II.  <u>Requests Made In Notices</u>

Pursuant to Rule 7(b)(1) of the Federal Rules of Civil Procedure, "[a] request for a court order must be made by motion."  The Court will not consider requests that are not made by motion.

Plaintiff may renew its requests by filing a motion that complies with Rule 7(b).  However, the Court notes that the problem Plaintiff has identified—discovering new infringing domain names—is one that has been ongoing, such that it was already highlighted in the original complaint at the time of filing this action.  (Doc. 1 ¶ 18.)  The very relief Plaintiff sought—temporary injunctive relief—has spurred the latest spate of domain-name jumping.  It seems likely that expanding the scope of the existing preliminary injunction and the previously authorized expedited discovery to encompass the new

domain names will simply lead to more domain-name jumping, such that the solution Plaintiff proposes does not appear to be efficient or effective. Any renewed motion should address this dilemma. *Cf. Hobbs v. Fifth Third Bank*, 2021 WL 5577406, *10-11 (S.D. Ohio 2021) ("Showing irreparable harm, however, does not end the inquiry. Hobbs must also establish that the injunctive relief he requests would *remedy or prevent* that harm. . . . [T]he relief he requests will not remedy that harm . . . [so] preliminary injunctive relief is improper.").

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to serve by alternative means (Doc. 30) is **granted**. Plaintiff may serve Defendants via the email addresses referenced in its motion.

Dated this 27th day of November, 2024.

_____
Dominic W. Lanza
United States District Judge