**Womble Bond Dickinson (US) LLP**
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595
Telephone: 602.262.5311

**Kyle W. Kellar** (Admitted *Pro hac vice*)
Direct Dial: 626.683.4590
Direct Fax:  626.577.8800
Email:   kyle.kellar@wbd-us.com

**Ryan D. Pont** (State Bar No. 033391)
Direct Dial: 602.262.5313
Direct Fax:  602.734.3769
Email: ryan.pont@wbd-us.com

**Nikith Chavali** (State Bar No. 039115)
Direct Dial: 602.262.5312
Direct Fax:  602.734.3769
Email: nikith.chavali@wbd-us.com

*Attorneys for Plaintiff wavve Americas, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Wavve Americas, Inc., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Arms Asuncion, an individual; James Marque, an individual; Mangho Kim, an individual; Jaeho Kim, an individual; and Taeryong Kim, an individual,<br><br>Defendants. | Case No. 2:24-cv-02071-DWL<br><br>**PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST ALL DEFENDANTS** |

## I.     INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 55(b)(2), Plaintiff wavve Americas, Inc. ("wA" or "Plaintiff") respectfully requests the Court enter final default judgment against Defendants Arms Asuncion, James Marque, Mangho Kim, Jaeho Kim, and Taeryong Kim (a.k.a. Kim Taeryong) (collectively, "Defendants") for failure to appear or otherwise respond to wA's Second Amended Complaint within the time prescribed by the Federal Rules of Civil Procedure.

Plaintiff brought this case in response to Defendants' unlawful distribution of numerous Korea-originating television programming and feature films via their respective

East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

WOMBLE BOND DICKINSON

1  domain names in violation of wA's exclusively licensed rights to do so.  Presently, the

2  domain names that are the subject of this action are GOPLAY.PW,

3  GOPLAY.ANONTPP.COM, GOPLAY.ML, GOPLAY.SU, SONAGITV.LIVE,

4  SAFETV-ONLINE.COM, KOTBC.COM, YEWOOTV.COM, TV25.CO, TV25.INFO,

5  TV25.APP, TV25.ME, and TV25.MS (the "Subject Domains").[1]

6        Despite numerous attempts to contact Defendants and their being properly served

7  with the Second Amended Complaint (Dkt. 52, "SAC") and Summons on July 21, 2025,

8  Defendant has failed to make an appearance in this case, respond to the SAC, or otherwise

9  contact Plaintiff.  (*See* Dkts. 56–60).  The Clerk entered default against Defendants pursuant

10 to Federal Rule of Civil Procedure 55(a) on August 25, 2025.  (Dkt. 62).  Plaintiff now

11 seeks entry of default judgment against Defendants pursuant to Federal Rule of Civil

12 Procedure 55(b)(2), and the issuance of a permanent injunction against Defendants pursuant

13 to 17 U.S.C. § 502.

14 **II.    STATEMENT OF FACTS**

15      **A.    wA's KOCOWA® Service and Exclusive Rights in Copyrighted Works**

16      wA is the leading distributor of Korea-originating television programming and

17 feature films in the United States, which it streams to viewers through its popular

18 KOCOWA® service.  (Dkt. 21, ¶¶ 11–12).  wA licenses media content from, *inter alia*, the

19 three largest broadcast networks in Korea—Korean Broadcasting System (KBS),

20 Seoul Broadcasting System (SBS), and Munhwa Broadcasting Corporation (MBC).[2]  (*Id.* at

21 ¶¶ 13–15).  wA is currently the exclusive licensee of the United States distribution rights to

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595
WOMBLE BOND DICKINSON

[1]  Throughout the pendency of this litigation, Defendants have been moving and/or concealing their copyright operations by using different, but similar, domain names.  (Dkt. 46, p. 2 of 9; Dkt. 47, p. 3 of 10).  For example, wA discovered that the infringing content from TV25.CO was moved to TV25.INFO (which was converted from a website advertising access to TV25.CO to fully hosting infringing content), and was later moved to TV25.APP, TV25.ME and TV25.MS (the "TV25 Domains").  (*Id.*).  Similarly, the infringing content previously available on GOPLAY.PW, was then moved to GOPLAY.ANONTPP.COM, GOPLAY.ML and GOPLAY.SU (the "GOPLAY Domains").  (*Id.*).

[2]  wA is a joint partnership between Content Wavve, SK Telecom, KBS, MBC, and SBS.  (*See* https://corp.kocowa.com/who-is-wa/; Dkt. 21, ¶ 11).

over 1,300 different programs owned by, *inter alia*, KBS, SBS, and MBC (the "copyrighted Works"), which it distributes (*i.e.*, streams) via its KOCOWA® service. (*Id.*). The copyrighted Works are first published in Korea and are later made available on wA's KOCOWA® service for viewing in the United States. (*Id.* at ¶ 13). wA generates revenue by a combination of placing ads in free video streams and by charging users a recurring subscription fee for ad-free video streams. (*Id.* at ¶ 16).

### B.    Defendants' Infringement of the Copyrighted Works

As described in detail within the operative Complaint, Defendants have been distributing unauthorized copies of works exclusively licensed to wA, without authorization, via their respective Subject Domains. (Dkt. 21, ¶¶ 17–35).

Exhibit I to the SAC lists only some examples of Korea-originating television shows exclusively licensed to wA for distribution in the United States that are available, without permission, on each of the Subject Domains. (SAC, ¶ 38, Exs. I-1, I-2, I-3, I-4, I-5, and I-6). A complete list of programs owned exclusively licensed to wA for distribution in the United States as of July 30, 2024, is attached as Exhibit F to the SAC.

In response to the Temporary Restraining Order granted by this Court on September 9, 2024 (Dkt. 24, pp. 9–10)[3], the Subject Domains of YEWOOTV.COM, KOTBC.COM, SONAGITV.LIVE, SAFETV-ONLINE.COM, GOPLAY.PW and TV25.CO were disabled by their registrar of record, Namecheap, Inc. ("Namecheap"), and the Subject Domain of TV25.INFO was found to be inactive by its registrar of record, Vautron AG ("Vautron") (but not without first being converted from a website advertising access to TV25.CO to directly hosting infringing content thereon). (*See* Dkt. 26; Dkt. 27-1, p. 2 of 10).

In response to the disabling of TV25.CO and TV25.INFO, Defendant Taeryong began using the Subject Domains of TV25.APP, TV25.ME, TV25.MS and TV25.IO to distribute infringing content previously available on TV25.CO and TV25.INFO. (*See generally* Dkt. 33; Dkt. 46, p. 2 of 9). Although these new domains are presently

---

[3] The Court converted the Temporary Restraining Order (Dkt. 24) to a Preliminary Injunction on October 1, 2024 (Dkt. 32).

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

WOMBLE BOND DICKINSON

inaccessible, based on their domain-jumping, it is likely that Defendant Taeryong may resume distributing infringing content via additional TV25-related domain names.

Similarly, in response to the disabling of GOPLAY.PW, Defendant Asuncion began using the Subject Domains of GOPLAY.ANONTPP.COM, GOPLAY.ML and GOPLAY.SU to distribute the infringing content previously available on GOPLAY.PW. (Dkt. 46, p. 2 of 9). Moreover, in yet another effort to obfuscate their unlawful actions, Defendant Asuncion began selectively providing access to GOPLAY.ML and GOPLAY.SU to tens of thousands of users via the GOPLAY Discord Channel. (Dkt. 47, pp. 6–7 of 10). While the GOPLAY Discord Channel has now been disabled, based on the extent of Defendant Asuncion's infringing activities, it is likely that Defendant Asuncion may attempt to further unlawfully distribute infringing content through additional GOPLAY-related domains.

### C.    Defendants' Default

On July 1, 2025, wA filed its Second Amended Complaint against Defendants, in which Plaintiff sought judgment in its favor on its claims; injunctive relief; and attorneys' fees. (SAC, p. 20 of 21).

On September 5, 2025, wA filed its Second Renewed *Ex Parte* Motion for TRO and Motion for Preliminary Injunction (Dkt 22, the "Second TRO Motion"), in which Plaintiff sought to prevent Defendants and those in active concert with them, from engaging in, or enabling, the infringement of copyrighted works exclusively licensed to wA, by requiring Defendants and those in active concert with them to disable their respective Subject Domains and certain social media accounts used to advertise the same. (Dkt. 22, pp. 1–2 of 18). On October 1, 2024, the Court vacated the preliminary injunction hearing and granted the preliminary injunction motion as to Defendants (Dkt. 32).

On September 20, 2024, wA filed a Motion for Alternative Service (Dkt. 30), seeking an Order allowing it to serve each of the Defendants via their respective email addresses, which the Court granted on November 27, 2024 (Dkt. 35). In its Nov. 27th Order, the Court notes that "Plaintiff has attempted to discover the Defendants' whereabouts and its attempts

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

WOMBLE BOND DICKINSON

have been unsuccessful and that "the Defendants' addresses are unknown, and therefore the Hague Service Convention does not apply." (Dkt. 35, pp. 6–7 of 8). Accordingly, each of the Defendants were served with copies of the Summons and SAC (Dkt. 52) via their respective email addresses, and a copy of the respective proofs of Service was filed with the Court on August 15, 2025. (*See* Dkts. 56–60).

Despite proper service by wA, none of the Defendants have made any appearance in this case nor have filed any responsive pleadings, and wA has not received a response from any of the Defendants. Accordingly, upon wA's request, the Clerk entered Default against Defendant on August 25, 2025. (Dkt. 62).

### D. **Defendants' Respective Identities**

Throughout the pendency of this litigation, Defendants have been moving their copyright operations to different, but similar, domain names. (*See* Dkt. 22, pp. 6–7 of 18, Dkt. 33; Dkt. 34; Dkt. 46, p. 2 of 9). In a further effort to stop this domain-jumping, and to identify the complete identity of the Defendant registrants of the Subject Domains, wA filed a Motion to Modify the Court's 08/16/2024 Order (Dkt. 17) (Dkt. 46, the "Motion to Modify") on January 30, 2025.

On February 3, 2025, the Court issued an Order granting wA's Motion to Modify "in that it clarifies that the order [Dkt. 17] permits Plaintiff to conduct early discovery, using the subpoena power of Rule 45, to ascertain the identity and whereabouts of all Defendants to this action" and that "[i]t is not necessary for Plaintiffs to seek permission to add certain discovery recipients or to add certain domain names because the original order is broad enough to encompass any discovery intended to locate and identify Defendants." (Dkt. 49, p. 4 of 7).

Accordingly, using the discovery power allowed by this Court, wA attempted to further investigate the true and complete identity of the Defendant registrants of the Subject Domains. However, even after a reasonable investigation, wA has been unable to determine the true and complete physical address for any of the Defendants because, in every case, the Defendant registrant either provided an incomplete and/or incorrect physical address to the

respective third-party entities.   As such, upon information and belief, the purported identities of the Defendant registrants of each of the Subject Domains are as follows:

| Domain Name | Name of Registrant | Email Address of Registrant |
|---|---|---|
| GOPLAY.PW; GOPLAY.ANONTPP.COM; GOPLAY.ML; and GOPLAY.SU | Arms Asuncion | rakes-sleeps0p@icloud.com |
| SONAGITV.LIVE; and SAFETV-ONLINE.COM | James Marque | jamesmarque95@gmail.com |
| KOTBC.COM | Mangho Kim | pigpupkin@gmail.com |
| YEWOOTV.COM | Jaeho Kim | cadspn@gmail.com |
| TV25.CO; TV25.INFO; TV25.APP; TV25.ME; and TV25.MS | Taeryong Kim (a.k.a Kim Taeryong) | tailoong@hotmail.com |

## III.   ARGUMENT

Because the Clerk of the Court has entered default against Defendant under Federal Rule of Civil Procedure 55(a), Plaintiff may now move the Court for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2).   *Million v. Pindernation*

*Holdings LLC*, No. CV-23- 00072-PHX-MTL, 2023 WL 2813684 at *4 (D. Az. April 5, 2023) (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)).

Further. "[u]pon entry of default, the factual allegations in a complaint, except those relating to damages, are deemed admitted." *Atlatl Group LLC v. Unknown Parties*, No. CV-20-01199-PHX-DJH, 2023 WL 2596100 at *1 (D. Az. March 21, 2023) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987)).

Based on the well-pleaded allegations of the SAC, default judgment is appropriate here because (1) the Court has jurisdiction to issue the requested relief; (2) jurisdiction and venue are proper, (3) each of the Defendants was properly served; and (4) Plaintiff has demonstrated entitlement to judgment in its favor for Defendants' copyright infringement under 17 U.S.C. § 501.

## A.     The Court Has Jurisdiction

"Before assessing the merits of a plaintiff's motion for default judgment, the Court must confirm that it has subject-matter jurisdiction over the case and personal jurisdiction over the defendant." *Atlatl Group*, 2023 WL 2596100 at *1 (citing *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999)). This prevents the Court from "entering a default judgment that can later be successfully attacked as void." *Sennheiser Electronic Corp. v. Evstigneeva*, Case No. CV 11-7884 GAF (FFMx), 2012 WL 13012384 at *2 (C.D. Cal. Sept. 27, 2012) (quoting *In re Tuli*, 172 F.3d at 712) (internal quotations omitted)).

Here, the Court has jurisdiction over the subject matter of this lawsuit pursuant to, at least, 28 U.S.C. §§ 1331 and 1338(a). (SAC, ¶ 2). Further, each of the Defendants consented to subject matter and personal jurisdiction in the state of Arizona by registering at least some of their respective Subject Domains with Namecheap, and on account of their distribution of infringing content within the state of Arizona. (*Id.* at ¶¶ 3–5). In relevant part, the Namecheap Registration Agreement requires that:

> [F]or the adjudication of third party disputes (i.e.,
> disputes between you and another party, not us) concerning or
> arising from use of domain names registered hereunder, **you**

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

WOMBLE BOND DICKINSON

1  **shall submit without objection, without prejudice to other**

2  **potentially applicable jurisdictions, to the subject matter**

3  **and personal jurisdiction of the courts** ... (ii) where we are

4  located, currently those **State or federal courts whose**

5  **geographic districts include Maricopa County, State of**

6  **Arizona**.

7  (*Id.*) (**emphasis** added).

8       Thus, in agreeing to Namecheap's Registration Agreement to register the domain

9  names at issue, Defendant consented to jurisdiction in this Court "through a forum selection

10 clause in a contract." *S.E.C. v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007) (providing that

11 "parties may consent to jurisdiction through a forum selection clause in a contract").

12      Alternatively, if the Court finds that any Defendant has not consented to jurisdiction

13 in this Court or that the requirements for specific personal jurisdiction are otherwise unmet,

14 this Court has general personal jurisdiction over Defendants under at least Fed. R. Civ. P.

15 4(k)(2) because Plaintiff's claims arise under federal copyright law, and because the Subject

16 Domains and the infringing content thereon are accessible to users in the United States, any

17 such Defendant would not be subject to jurisdiction in any one state's courts of general

18 jurisdiction, and the exercise of jurisdiction over any such Defendant would comport with

19 due process.  (SAC, ¶ 6).

20      Venue is also appropriate in this district under 28 U.S.C. § 1391, at least because the

21 claim asserted arises out of wrongful acts that occurred and are occurring within this judicial

22 district.  (SAC, ¶ 7).

23      Accordingly, this Court has subject matter and personal jurisdiction over each

24 Defendant, and venue is proper in this Court.

25      **A.    The *Eitel* Factors Strongly Favor Default Judgment**

26      "Entry of default judgment is within a court's discretion."  *Atlatl Group*, 2023 WL

27 2596100 at *1 (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)).

28 In determining whether to grant a request for default judgment, the Ninth Circuit has

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

WOMBLE BOND DICKINSON

enumerated seven factors, the so-called *Eitel* factors, to be weighed.  *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  The *Eitel* factors are:

> (1) the possibility of prejudice to the plaintiff;
>
> (2) the merits of plaintiff's substantive claim;
>
> (3) the sufficiency of the complaint;
>
> (4) the sum of money at stake in the action;
>
> (5) the possibility of a dispute concerning material facts;
>
> (6) whether the default was due to excusable neglect; and
>
> (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.*

When considering the *Eitel* factors, "the Court accepts as true the complaint's well-pled factual allegations." *Fornix Holdings LLC v. Unknown Party*, No. CV-22-00494-PHX-DLR, 2023 WL 6295014 at *1 (D. Az. Sept. 27, 2023) (citing Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)).  Nevertheless, while weighing the relevant factors, the Court "is not required to make detailed findings of fact."  *Id.* (quoting Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002) (internal quotations omitted)).

Here, all of the *Eitel* factors weigh strongly in favor of this Court granting default judgment.

### 1. The First, Fifth, Sixth, and Seventh *Eitel* Factors Favor Default

"In cases like this one, in which [a defendant has] not participated in the litigation at all, the first, fifth, sixth, and seventh [Eitel] factors are easily addressed." *Fornix Holdings*, 2023 WL 4488976 at *1 (quoting *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210 at *3 (D. Az. Mar. 27, 2020)) (alternations in original).

As to the first factor, wA will be prejudiced if a default judgment is not entered because, absent a judgment, it will be left without recourse against Defendants, who will continue to infringe wA's intellectual property rights via the Subject Domains.



201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

WOMBLE BOND DICKINSON

- 9 -

*Fornix Holdings*, 2023 WL 4488976 at *1 (citing *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)).

As to the fifth and sixth Eitel factors, there is virtually no possibility of a dispute as to material facts or of excusable neglect for the default in this case, at least because Defendants have admitted to the factual allegations of the SAC by their failure to appear, establishing that Defendants engaged in the acts alleged, and because Defendants continue to remain non-responsive and have failed to retain any counsel despite having been properly served. *Fornix Holdings*, 2023 WL 4488976 at *2; *Million v. Pindernation Holdings LLC*, No. CV-23-00072-PHX-MTL, 2023 WL 2813684 at *3 (D. Az. Apr. 6, 2023) ("Where a defendant is served properly, it is unlikely that their failure to answer is a result of excusable neglect."). As such, there is no dispute as to material facts, and no evidence that Defendants' defaults are due to excusable neglect.

The seventh factor "generally weighs against default judgment" because "cases should be decided on their merits whenever reasonably possible." *Fornix Holdings*, 2023 WL 4488976 at *2 (quoting *Eitel*, 782 F.2d at 1472). Nevertheless, the Federal Rules authorize default judgments, "indicat[ing] that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177. Indeed, "Defendant's failure to defend this matter ... makes a decision on the merits impossible." *Atlatl Group*, 2023 WL 2596100 at *4 (citing *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1051 (N.D. Cal. 2010)). Thus, the seventh factor also weighs in favor of default judgment.

Accordingly, the Fifth, Sixth, and Seventh *Eitel* Factors favor entering a default judgment in favor of wA.

### 1.    The Fourth *Eitel* Factor

For reasons similar to those as described above, the fourth Eitel factor also favors default judgment. The Copyright Act allows statutory damages per infringed work of not less than $750 or more than $30,000 as the court considers just, and where an infringement is willful, a court has discretion to increase the award of statutory damages to $150,000 per infringement. 17 U.S.C. § 504(c)Here, Defendants have profited by collecting donations

WOMBLE BOND DICKINSON

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

from users of at least some of the Subject Domains and/or generating revenue from hosting online advertisements, profits that would otherwise have been directed to wA.  wA has also dedicated substantial resources to identifying, locating, and serving Defendants.  Moreover, because wA does not seek any monetary damages and only seeks injunctive relief, the fourth *Eitel* factor favors default judgement.  *See Diners Club Int'l Ltd. v. Privatedinersclubportal.co.uk*, No. CV-24-01559-PHX-SPL, 2025 U.S. Dist. LEXIS 32168, at *9 (D. Ariz. Feb. 21, 2025).

### 2.    <u>The Second and Third *Eitel* Factors</u>

The remaining *Eitel* factors are often analyzed together and favor a default judgment where the complaint sufficiently states a claim for relief, as is the case here.  *Cotton v. Zitterman Bosh & Assoc.*, No. 11-cv-2024-PHX-DGC, 2012 WL 3289921, at *1 (D. Ariz. Aug. 13, 2012) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388-89 (9th Cir. 1978).  Here, wA has stated a proper claim for copyright infringement against each of the Defendants.  Indeed, in considering wA's arguments in its Motion for a TRO (Dkt. 22), the Court noted that wA sufficiently established "both the irreparability and immediacy of the harm that Plaintiff will suffer in the absence of a TRO."  (Dkt. 24, p. 5 of 10).

### a)    <u>Count I: Copyright Infringement by All Defendants Pursuant to 17 U.S.C. § 501</u>

"To present a prima facie case of direct copyright infringement, a plaintiff must demonstrate: (1) ownership of the copyright at issue; (2) a violation of an exclusive right set forth in copyright, and (3) causation by the defendant; a plaintiff need not prove damages." *Fornix Holdings*, 2023 WL 4031961 at *2 (citing *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1080 (9th Cir. 2021)).  Further, when a right under a copyright has been exclusively licensed, "only the exclusive licensee and not the original owner can sue for infringement of those rights." *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1170 (9th Cir. 2013).

Here, the copyrighted Works at issue in this case are offered through wA's KOCOWA® service, and include works that are owned, *inter alia*, by the three largest

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

WOMBLE BOND DICKINSON

Korean broadcast networks—KBS, MBC, and SBS.  (SAC, ¶¶ 13–15).  Indeed, wA licenses media content from each of KBS, MBC and SBS, and is the exclusive licensee of the United States distribution rights to over 1,100 different programs, which it distributes via its KOCOWA® service.  (Dkt. 22-1 ¶ 2).

Further, Defendants infringe upon Plaintiff's exclusive rights in several of the copyrighted Works by doing exactly what Plaintiff does through its KOCOWA® service, albeit without authorization.  (SAC, ¶¶ 17–18, 20–38).  That is, Defendants distribute (i.e., stream) unauthorized copies of the copyrighted Works over the Internet to viewers in the United States via their respective Subject Domains.  (*Id.*).

While Plaintiff's rights in the copyrighted Works are undisputed, for completeness, relevant facets of the copyrighted Works, and Plaintiff's ownership of certain rights thereunder, are discussed below.

**(1)      The Copyrighted Works Need Not Be Registered**

Although United States works must be registered with the U.S. Copyright Office before an infringement action can commence, "the Berne Convention Implementation Act, 17 U.S.C. §§ 101, et seq., 'allows owners of unregistered foreign copyrights from Berne Convention signatory nations to bring claims of copyright infringement in United States courts.'"  *Liaigre, Inc. v. Cal. Furniture Collection, Inc.*, No. SA CV19-01160 JAK (KESx), 2022 WL 18278600 at *7 (C.D. Cal. Oct. 6, 2022) (quoting *MPD Accessories B.V. v. Urban Outfitters*, No. 12 CIV. 6501 (LTS)(KNF), 2014 WL 2440683 at *5 (S.D.N.Y. May 30, 2014)).

Here, each of the copyrighted Works is broadcast and publicly displayed in Korea by the respective copyright owner before it is distributed in the United States.  (SAC, ¶ 14).  Further, Korea has been a party to the Berne Convention since August 21, 1996.  (*Id.* at ¶ 56).  As such, the copyrighted Works are not United States works and are not subject to the registration requirements of 17 U.S.C. § 411(a).  *See Crunchyroll, Inc. v. Pledge*, Case No. C 11-2334 SBA, 2014 WL 1347492 at *16 (N.D. Cal. Mar. 31, 2014) (television episodes first broadcast in Japan were not "United States work" and need not be registered).

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

WOMBLE BOND DICKINSON

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

WOMBLE BOND DICKINSON

1

### (2)    wA Has Standing

2      "[T]o have standing to bring a copyright infringement claim, 'the plaintiff must have

3  a legal or beneficial interest in at least one of the exclusive rights described in § 106,' and

4  'the infringement must be committed while he or she is the owner of the particular exclusive

5  right allegedly infringed.'" *Crunchyroll*, 2014 WL 1347492 at *13 (quoting *Silvers v. Sony*

6  *Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (en banc) (quoting 17 U.S.C.

7  § 501(b)).  The Copyright Act permits that the "exclusive rights may be chopped up an[d]

8  owned separately, and each separate owner of a subdivided exclusive right may sue to

9  enforce that owned portion of an exclusive right."  *Id.* at *14 (quoting *Silvers*, 402 F.3d at

10  886–87).  Such a transfer in ownership must be something other than a nonexclusive license

11  and must be "in writing and signed by the owner of the rights conveyed or such owner's

12  duly authorized agent."  *Id.* at *14 (quoting 17 U.S.C. §204(a)).  "[T]here is no requirement

13  for any 'magic words'" in the writing, however.  *Id.* (quoting *Radio Television Espanola*

14  *S.A. v. New World Entm't, Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999)).

15      Relevant portions of a representative sample of license agreements with KBS and

16  SBS granting wA exclusive rights in certain ones of the copyrighted Works, including the

17  exclusive grant of content distribution and transmission business rights in the United States,

18  are attached as Exhibit G to the SAC.  (*See, e.g.,* Ex. G-1 (license agreement between wA

19  and KBS stating, in part, that KBS grants to wA, in the UCAN[4] territory, the "exclusive

20  rights to distribute, transmit and exploit the Program via streaming and/or any other means

21  of digital distribution by means of an IP-based transmission path...")[5].

22      Nevertheless, even if these writings are deemed insufficiently specific, Plaintiff

23  should not be precluded from establishing standing in this case.  Plaintiff is a corporation

24  that is owned and controlled, in part, by each of the three copyright owners—KBS, MBC,

25  and SBS.  (SAC, ¶¶ 12–15).  Further, each of KBS, MBC, and SBS has at least one member

26

[4] "UCAN" refers to the United States and Canada.  (Dkt. 52-1, p. 121 of 303).

27 [5] The license agreement includes an "exception of KBS World linear TV channels including Catchup
service."  (Dkt. 52-1, p. 124 of 303).  Linear TV refers to traditional broadcast and cable-provided
28  programming and is different from an "IP-based transmission path," such as the OTT services over an
Internet (IP) connection used by wA's KOCOWA® service and the Subject Domains.

on wA's Board of Directors and expressly authorized Plaintiff to bring this suit. (Declaration of Jeongphil "JP" Joo, Dkt. No. 4, ¶ 7). Accordingly, there is no dispute between Plaintiff and the copyright owners, KBS, MBC, and SBS, as to the validity of the transfer of exclusive rights to Plaintiff.

The Ninth Circuit has stated that "in situations 'in which the copyright holder appears to have no dispute with its licensee on [the issue of transfer], it would be anomalous to permit a third party infringer to invoke this provision against the licensee'." *Crunchyroll*, 2014 WL 1347492 at *14 (quoting Radio Television Espanola, 183 F.3d at 929) (alteration in original). Thus, even if the writings are deemed insufficient, such a finding should not preclude Plaintiff from asserting the copyright infringement claim since the copyright owners are each a stockholder of Plaintiff and expressly authorized this litigation. *See Crunchyroll*, 2014 WL 1347492 at *14 (permitting an exclusive licensee to maintain a copyright infringement claim despite a lack of any writing evidencing the purported transfer of rights).

Lastly, "[a]s a general matter, the law of the jurisdiction where an artistic work is created and first published governs issues concerning copyright ownership." *Liaigre*, 2022 WL 18278600 at *7 (internal quotations and citations omitted). Here, Korean copyright law would govern any issue regarding copyright ownership. As at least one other court has found that an exclusive transfer of distribution rights is permitted under Korean copyright law. *See Seoul Broadcasting Sys. Int'l, Inc. v. Young Min Ro*, 784 F. Supp. 2d. 611, 616 (E.D. Va. 2011) (citing Korean Copyright Act, Articles 45–47 and 53–55) ("The Korean parent networks, in turn, then assigned to their United States affiliates, the plaintiffs in this case, all rights to distribute and rebroadcast the works in the United States. Under Korean copyright law, such transfers or assignments of copyrights are valid and fully enforceable, and plaintiffs have therefore adequately established standing to sue as a matter of law.") (internal citations omitted). As such, the exclusive right to distribute the copyrighted Works in the United States was properly and validly transferred from the copyright owners to Plaintiff under Korean copyright law.

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

WOMBLE BOND DICKINSON

Thus, Plaintiff has standing to bring its copyright infringement claims against each and every one of the Defendants.

(3)    **United States Copyright Law Is Applicable To Defendant's Acts**

While "United States copyright laws do not reach acts of infringement that take place entirely abroad," here, the infringement may begin abroad but culminates in the United States when the infringing shows are viewed by any number of individuals. Such infringement is not "wholly extraterritorial" as it is specifically directed to viewers in the United States and culminates in the United States, rendering the application of United States copyright law against Defendant proper. *See Crunchyroll*, 2014 WL 1347492 at *17 (finding acts resulting in viewing of copyrighted works by individuals in the United States sufficient to find the infringing conduct not "wholly extraterritorial"); *Sound N Light Animatronics Co., Ltd. v. Cloud B, Inc.*, No. CV 16-05271-BRO (JPR), 2017 WL 3081685 at *7 (C.D. Cal. Apr. 7, 2017) (finding application of U.S. copyright law appropriate where the defendant's "allegedly infringing products, although manufactured in China, reached consumers in the United States"); *Spanski Enters., Inc. v. Telewizja Polska, S.A.*, 883 F.3d 904, 915 (D.C. Cir. 2018) (holding application of U.S. copyright law proper because, *inter alia*, "Congress had good reason to allow domestic copyright holders to enforce their rights against foreign broadcasters who direct infringing performances into the United States ... [because] a statutory scheme that affords copyright holders no protection from such broadcasters would leave the door open to widespread infringement…").

Further, each of the Defendants utilized and/or utilizes Cloudflare, Inc.'s ("Cloudflare") North American Content Delivery Network (CDN), which specifically provides faster and more reliable viewing to individuals located in the United States. (SAC, ¶ 45.); *Will Co., Ltd. v. Lee*, 47 F.4th 917, 924 (9th Cir. 2022) (finding that "by choosing to host ThisAV.com in Utah and to purchase CDN services for North America, Defendants chose to have the site load faster for viewers in the United States and slower for viewers in other places around the world ... Defendants' choice is good evidence that they

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

WOMBLE BOND DICKINSON

1  were motivated to appeal to viewers in the United States more than any other geographical

2  location.").

3  **A.    wA Is Entitled To Its Requested Remedies**

4  wA is entitled to its requested remedies of judgment in wA's favor on its claims;

5  injunctive relief; and attorneys' fees.

6  **1.    wA is Entitled to a Permanent Injunction**

7  In copyright cases, courts have awarded permanent injunctive relief as part of default

8  judgment "where the defendant continued to violate the plaintiff's rights[,] and the balance

9  of equities and the public interest favored such an injunction." *Hydentra HLP Int., Ltd. v.*

10  *Porn69*, No. CV-15-00451-PHX-DGC, 2016 U.S. Dist. LEXIS 75836, at *7-8 (D. Ariz.

11  June 10, 2016).  "A permanent injunction is especially appropriate where a threat of

12  continuing infringement exists." *Broad. Music, Inc. v. TLM Invs., P.L.C.*, No. CV 09-8131-

13  PCT-JAT, 2010 U.S. Dist. LEXIS 73627, at *22 (D. Ariz. July 21, 2010) (citations omitted).

14  A defendant's disregard of the plaintiff's notice and ongoing infringement warrants a

15  permanent injunction.  *Id.* at 23. To obtain a permanent injunction, a plaintiff must

16  demonstrate: "(1) that plaintiff has suffered an irreparable injury; (2) that remedies available

17  at law, such as monetary damages, are inadequate to compensate for that injury; (3) that,

18  considering the balance of hardships between the plaintiff and defendant, a remedy in equity

19  is warranted; and (4) that the public interest would not be disserved by a permanent

20  injunction." *Liberty Media Holdings, LLC v. Vinigay.com*, No. 11-cv-280- PHX-LOA,

21  2011 WL 7430062, at *14 (D. Ariz. Dec. 28, 2011) (citing *eBay Inc. v. MercExchange,*

22  *L.L.C.*, 547 U.S. 388, 391 (2006)).

23  Here, Plaintiff has and will continue to suffer irreparable injury because, despite this

24  lawsuit, Defendants continue to infringe Plaintiff's exclusive rights to distribute the

25  copyrighted Works in the United States, including via moving and/or obfuscating their

26  copyright infringement operations.  (*See* Declaration Of Kyle W. Kellar in support of

27  Plaintiff's Second Renewed *Ex Parte* Application For Temporary Restraining Order

28  [Dkt. 22-1] ¶¶ 9–12).

Indeed, Plaintiff's business relies on the licensing of Korea-originating copyrighted Works from their Korean owners for distribution to subscribers of its KOCOWA® service in the United States.  Defendant, by infringing Plaintiff's exclusive rights in the copyrighted Works and offering the same to anyone in the United States free of charge, is directly undercutting Plaintiff's business model and risks Plaintiff's future success.  Moreover, monetary remedies are unable to adequately compensate for the shear scope of Defendant's infringement but, even if they could be quantified, are extremely unlikely to satisfied in light of Defendant's overseas domicile and refusal to participate in this lawsuit.

The balance of equities tips in wA's favor because Defendants have no cognizable interest in knowingly and willfully infringing wA's intellectual property rights, and, therefore, "cannot complain of the harm that will befall [them] when properly forced to desist from [their] infringing activities." *Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995).  Defendant's conduct is contrary to the law, and "the public interest is not disserved by prohibiting Defendant from engaging in conduct contrary to law." *Nicklaus Companies LLC v. Bryan Hepler Golf LLC*, No. CV-18-01748-PHX-ROS, 2019 WL 1227198 at *1 (D. Az. March 15, 2019).

wA also respectfully requests the Court to issue an injunction that orders the transfer of each of the Subject Domains to wA's possession.  In cases of online piracy, courts, including in this District, have previously issued injunctions also requiring transfer of infringing domain names.  *See e.g.*, *Fornix Holdings LLC v. Unknown Party*, No. CV-23-01200-PHX-MTL, 2025 U.S. Dist. LEXIS 80831, at *18–19 (D. Ariz. Apr. 29, 2025) (granting injunctive relief, including transfer of domains at issue, against online infringers); *China Cent. Television v. Create New Tech. (HK) Ltd.*, No. CV1501869MMMAJWX, 2015 WL 12732432, at *22 (C.D. Cal. Dec. 7, 2015) (granting injunctive relief including transfer of websites and domain names used for streaming of copyrighted works); *Craigslist, Inc. v. Doe 1, et al.*, No. C09–4739 SI (BZ), 2011 WL 1897423, at *4 (ordering transfer of the infringing websites and the underlying domain names that auto-scraped and copied content from plaintiff's website).

Here, each of the Defendants deliberately concealed their respective identities, including by providing incomplete and/or incorrect information in connection with the Subject Domains, and by using privacy services that conceal registrant information. (SAC, ¶¶ 9–11).  Further, each of the Defendants has yet to participate in this litigation despite being served with alternative service, and has attempted and/or continues to attempt evasion of wA's enforcement efforts.  Defendants' actions make it likely that they will resume and/or continue their infringing activity despite wA's enforcement efforts and an order from this Court.  Therefore, to give practical effect to wA's enforcement efforts, this case warrants an injunction ordering the transfer of each of the Subject Domains to wA's possession.

Lastly, wA respectfully requests a lifting of the automatic stay as provided in Fed. R. Civ. P. 62(a) ("[E]xecution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, unless the court orders otherwise.").  Because each of the Defendants have refused to engage in this action, and for the above discussed reasons, wA respectfully submits that the 30-day stay will only further delay the termination of this action.

### 2.    wA is Entitled to its Attorneys' Fees and Costs

A court may "award a reasonable attorney's fee to the prevailing party."  17 U.S.C. § 505.  While courts have discretion regarding whether to award attorneys' fees, they routinely award the reasonable fees incurred by a successful plaintiff.  *See Broad. Music, Inc. v. McDade & Sons, Inc.*, 928 F. Supp. 2d at 1136 (D. Ariz. 2013).  "When making such a determination, the Court may consider several non-exclusive factors, including 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"  *Broad. Music Inc. v. Cowboys Up Inc.*, CV-19-00499-PHX-SMM CDB, 2019 WL 13472382, at *5 (D. Ariz. Oct. 21, 2019) (citation omitted).

Accordingly, wA requests that it be permitted to submit an appropriate application for attorneys' fees and evidence of such costs post-hearing, or as the Court otherwise directs.

IV.    **CONCLUSION**

For the foregoing reasons, wA respectfully requests that its motion for entry of default judgment be granted as to all Defendants.


DATED this 10th day of September, 2025.


Respectfully submitted,

WOMBLE BOND DICKINSON (US) LLP

By: ___s/Nikith Chavali_____
       Kyle W. Kellar
       Ryan D. Pont
       Nikith Chavali

*Attorneys for Plaintiff wavve Americas, Inc.*

201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

WOMBLE BOND DICKINSON